**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Amanda Rae Arbizu, | No. CV-18-00893-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Amanda Arbizu seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence and is based on legal error, the Court will reverse and remand for an award of benefits.

**I.     Background.**

On February 27, 2012, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning May 4, 2010. On August 21, 2014, ALJ Ted Armbruster heard Plaintiff's case. At the hearing, Plaintiff amended her onset date to July 1, 2012 with a date last insured of December 31, 2015. On May 27, 2016, the Appeals Council remanded the case based on new and material evidence of Plaintiff's mental limitations. On April 5, 2017, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified. On June 22, 2017, the ALJ

1    issued a decision that Plaintiff was not disabled within the meaning of the Social Security

2    Act. The Appeals Council denied Plaintiff's request for review of the hearing decision,

3    making the ALJ's decision the Commissioner's final decision.

4    **II.    Legal Standard.**

5           The district court reviews only those issues raised by the party challenging the ALJ's

6    decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set

7    aside the Commissioner's disability determination only if the determination is not

8    supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625,

9    630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance,

10   and relevant evidence that a reasonable person might accept as adequate to support a

11   conclusion considering the record as a whole. *Id.* In determining whether substantial

12   evidence supports a decision, the court must consider the record as a whole and may not

13   affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general

14   rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of

15   which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v.*

16   *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

17          Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*,

18   674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial

19   evidence supporting the ALJ's decision and the error does not affect the ultimate non-

20   disability determination. *Id.* The claimant usually bears the burden of showing that an error

21   is harmful. *Id.* at 1111.

22          The ALJ is responsible for resolving conflicts in medical testimony, determining

23   credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.

24   1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for

25   drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*,

26   881 F.2d 747, 755 (9th Cir. 1989).

27   **III.   The ALJ's Five-Step Evaluation Process.**

28          To determine whether a claimant is disabled for purposes of the Social Security Act,

1    the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the

2    burden of proof on the first four steps, but at step five, the burden shifts to the

3    Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

4        At the first step, the ALJ determines whether the claimant is engaging in substantial

5    gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the

6    inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe"

7    medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the

8    claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether

9    the claimant's impairment or combination of impairments meets or medically equals an

10    impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii).

11    If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step

12    four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC")

13    and determines whether the claimant is still capable of performing past relevant work. §

14    404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the

15    ALJ proceeds to the fifth and final step, where he determines whether the claimant can

16    perform any other work based on the claimant's RFC, age, education, and work experience.

17    § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled.

18    *Id.*

19        At step one, the ALJ found that Plaintiff meets the insured status requirements of

20    the Social Security Act through December 31, 2015, and that she has not engaged in

21    substantial gainful activity since July 1, 2012. At step two, the ALJ found that Plaintiff has

22    the following severe impairments: unspecified myalgia, myositis, or arthralgia;

23    degenerative changes of the lumbar spine; obesity; and headaches. At step three, the ALJ

24    determined that Plaintiff does not have an impairment or combination of impairments that

25    meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R.

26    Pt. 404. At step four, the ALJ found that Plaintiff has the RFC to perform:

27
28        [L]ight work (lifting and carrying 20 pounds occasionally and ten pounds frequently; sitting for at least six hours out of eight; and standing/walking at least six hours out of eight) as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps or stairs, never climb ladders, ropes,

or scaffolds, and occasionally stoop, kneel[,] crouch or crawl. She should avoid concentrated exposure to loud noise, unprotected heights, and moving and dangerous machinery.

(AR 23.)

The ALJ further found that Plaintiff is able to perform any of her past relevant work. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

**IV.     Analysis.**

Plaintiff argues the ALJ's decision is defective for three reasons: (1) the ALJ erred in rejecting Dr. Sabahi's assessments, (2) the ALJ erred in discounting Plaintiff's credibility regarding her symptom testimony; and (3) the ALJ erred in failing to find fibromyalgia to be a severe impairment. (Doc. 17 at 1.) Plaintiff's first two arguments are dispositive, and the Court will address each one below.

**A.     Weighing of Medical Source Evidence.**

Plaintiff argues that the ALJ improperly weighed the medical opinions of the treating physician, Dr. Ramin Sabahi.

**1.     Legal Standard.**

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion of a treating

or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quotations omitted). But "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

### 2.    Ramin Sabahi, M.D.

In October 2011, Dr. Ramin Sabahi began treating Plaintiff for fatigue and myalgia. (AR 593.) In December 2011, Dr. Sabahi began treating Plaintiff for fibromyalgia. (AR 595.) Between 2011 and 2016, Dr. Sabahi continued treating Plaintiff for fibromyalgia on a regular basis.[1] On May 28, 2013, Dr. Sabahi constructed a letter stating that Plaintiff was unable to work due to her medical condition and instructing the reader to call his office with any further questions. (AR 615.) On February 5, 2014, Dr. Sabahi completed a Fibromyalgia Impairment Questionnaire evaluating Plaintiff's condition. (AR 648-652.) Therein, Dr. Sabahi reiterates Plaintiff's diagnoses of fibromyalgia, depression, and migraines. (AR 648.) Dr. Sabahi lists Plaintiff's symptoms to include "chronic widespread pain, fatigue, insomnia [and] headaches." (AR 649.) He describes the location of Plaintiff's pain as being in the spine, chest, arms, hips, legs, and "knees/ankles/feet," and the frequency of the pain to be "continuous." (AR 649-50.)

Dr. Sabahi opined that Plaintiff has the following work limitations. In an eight-hour

---

[1] (*See* AR 597 (Jan. 2012); 599 (Mar. 2012); 601 (Apr. 2012); 603 (Jun. 2012); 605 (Oct. 2012); 607 (Apr. 2013); 613 (May 2013); 935 (Jul. 2013); 937 (Sept. 2013); 939 (Jan. 2014); 941 (Mar. 2014); 943 (Apr. 2014); 945 (Aug. 2014); 947 (Nov. 2014); 949 (Apr. 2015); 951 (Sept. 2015); 952 (Oct. 2015); 954 (Feb. 2016); 956 (Jun. 2016).)

work day, Plaintiff can sit for five hours, stand/walk for one hour, and Plaintiff must change positions every 30 minutes. (AR 650.) Dr. Sabahi further opined that Plaintiff is capable of occasionally lifting or carrying between 10-20 pounds, but can never kneel, bend, or stoop. (AR 652.) On February 5, 2015, Dr. Sabahi submitted a second letter reiterating his opinion of February 4, 2014, but added that Plaintiff's functional limitations were "affected by emotional factors related to her anxiety and depression." (AR 771.) On January 10, 2017, Dr. Sahabi completed another Fibromyalgia Questionnaire, reporting "extreme limitations in the claimant's ability to function, including a need to take unscheduled breaks every hour, frequent interference with her ability to concentrate, and frequent absences." (AR 28 (citing AR 969-73).)

Dr. Sabahi's medical opinions are contradicted by the opinions of state agency consulting physicians, Drs. Jerry Thomas, M.D. (AR 539), and Paul Schenk, M.D. (AR 108-14). Both Dr. Thomas and Dr. Schenk formed their respective opinions based solely on Plaintiff's medical history. Drs. Thomas and Schenk opined that Plaintiff had greater abilities than those identified in Dr. Sabahi's opinion. The ALJ could therefore discount Dr. Sabahi's opinion for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31.

### a. ALJ's Treatment of Dr. Sabahi's Opinions.

The ALJ afforded varying weights to each of Dr. Sabahi's four medical opinions. (AR 25-28.) First, in regard to Dr. Sabahi's May 28, 2013 letter, stating Plaintiff was unable to work due to her medical condition, the ALJ afforded "little weight to this opinion because it is not consistent with Dr. Sabahi's own treatment notes showing mild findings upon physical examination (Exs. 11F[AR 593-614] & 25F[AR 913-57]) or the claimant's own statements of her ability to engage in activities of daily living (Ex. 8F[AR 540-46])." (AR 25.)

Next, The ALJ afforded Dr. Sabahi's February 5, 2014 medical opinion (contained in the Fibromyalgia Impairment Questionnaire) on Plaintiff's physical limitations "some weight" but "does not give it controlling weight because the limitations to sitting and

standing and to kneeling, bending, and stooping, are not consistent with Dr. Sabahi's physical examination findings (Ex. 11F & 25F) or the claimant's ability to engage in activities of daily living (Ex. 8F)." (AR 25-26.)

Third, the ALJ afforded "little weight" to Dr. Sabahi's February 3, 2015 medical opinion reiterating his opinion stated on February 5, 2014, but adding that Plaintiff's functional limitations are "affected by emotional factors related to her anxiety and depression." (AR 26.) The ALJ provides the following in reasons for discounting Dr. Sabahi's February 3, 2015 medical opinion:

> The undersigned gives little weight to Dr. Sabahi's [February 3, 2015] opinion. Physical examination findings showed that the claimant has normal gait, normal range of motion and normal strength. (Ex. 15F/3)[AR 655]. This objective evidence was not consistent with Dr. Sabahi's opinion that claimant could sit for only five hours and stand for only one hour in an eight hour workday, or his finding that claimant would miss three days each month and was unable to push, pull, bend, kneel, or stoop. In addition, Dr. Sabahi is a neurologist and is not a qualified mental health provider. His statement regarding the claimant's "emotional factors" is not consistent with the claimant's limited mental health treatment history. (Ex. 16F)[AR 661-747]. Dr. Sabahi is unqualified to render opinions as to the limitations arising from psychological impairments. His opinions are inconsistent with the claimant's ability to care for four young children.

(AR 26-27.)

Lastly, the ALJ afforded "little weight" to Dr. Sahabi's January 10, 2017 medical opinion "because it is not consistent with the claimant's mild findings upon physical examination, including normal gait and strength in all extremities [] and her level of activity." (AR 28.)

The ALJ's reasons for discounting Dr. Sabahi's medical opinions can be summarized as follows: (1) Dr. Sabahi's opinions are not consistent with the objective medical evidence in the record or his own findings; (2) Dr. Sabahi's opinions are not consistent with Plaintiff's reported ability to engage in activities of daily living; and (3) "Dr. Sabahi is unqualified to render opinions as to limitations arising from psychological impairments." (AR 25-28.) The Court finds that the ALJ's reasons for discounting Dr. Sabahi's opinions are not specific and legitimate, and thus doing so was error.

**b.     First Reason: Inconsistent with Objective Medical Evidence.**

The ALJ's first reason for discounting Dr. Sabahi's opinion is that it is inconsistent with objective medical evidence in the record, including his own treatment notes. (AR 26.) Specifically, the ALJ cites to physical examinations by Dr. Sabahi and other medical professionals finding that Plaintiff has a "normal gait, normal range of motion and normal strength." (AR 25-27 (citing AR 655, 935, 937, 939, 941).) But the ALJ does not explain why Plaintiff's normal gait, range of motion, and strength, is inconsistent with Dr. Sabahi's opinions on Plaintiff's physical limitations. To be sure, Dr. Sabahi states that Plaintiff has a normal gait, range of motion and strength, but Dr. Sabahi also consistently opines that Plaintiff suffers from "chronic widespread pain, fatigue," specifies that those symptoms are suffered in her spine, arms, hips, legs, and knees/feet/ankles, and details that her pain is "continuous." (*See, e.g.*, AR 649-50; 597-613; 935-41.)

The ALJ provides no further The Court finds that the ALJ's first reason for discounting Dr. Sabahi's opinions is not specific and legitimate. *See Embrey*, 849 F.2d at 421-22 ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

**c.     Second Reason: Daily Living Activities.**

The ALJ's second reason for discounting Dr. Sabahi's opinion is that it is not consistent with Plaintiff's reported ability to engage in activities of daily living. (AR 26.) Specifically, the ALJ determines that "Dr. Sabahi's opinion was inconsistent with the claimant's ability to care for four young children[.]" (AR 26.)

While an ALJ may consider the inconsistency between a physician's opinion and a claimant's daily activities as a specific and legitimate reason for discounting that physician's opinion, *see Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999), the bare-bones and conclusory analysis presented by the ALJ in this instance is insufficient to do so. Here, the ALJ ignores that, at the time of Plaintiff's disability onset date in 2012, Plaintiff's "young" children were ages 15, 11, 10, and 5 years old. (AR 543.)

At that time, Plaintiff reported that she would drive two children to school in the morning, then go back to bed depending on her pain level, and pick those two children up in the afternoon. (AR 543.) She stated that she would make the children a snack after school, supervise homework, and would help her five-year-old with showering and hygiene. (AR 543.)

Nothing in Plaintiff's description of her daily activities is inherently inconsistent with Dr. Sahabi's medical opinion. *See Smolen*, 80 F.3d at 1287 n.7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."). Without further explanation from the ALJ as to how Plaintiff's daily activities are inconsistent with Dr. Sahabi's medical opinions, the Court must find the ALJ's second reason for discounting those opinions is insufficient.

### d.      Third Reason: Area of Expertise.

The ALJ's third reason for discounting Dr. Sahabi's medical opinions is that "Dr. Sabahi is unqualified to render opinions as to limitations arising from psychological impairments." (AR 27.) Specifically, the ALJ states that "Dr. Sahabi is a neurologist and is not a qualified mental health provider." (AR 27.) Plaintiff argues that Dr. Sabahi is capable of making a medical determination on Plaintiff's depression and anxiety symptoms because these conditions are all symptoms of fibromyalgia and Dr. Sabahi is the appropriate specialist for fibromyalgia and therefore qualified to render a mental health opinion for Plaintiff. (Doc. 17 at 11.)

The medical opinion of a specialist is given more weight about medical issues in that specialist's area of specialty than the medical opinion of a source that is not a specialist. 20 C.F.R. § 404.1527(c)(5). "[T]he regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of non-specialists." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citation omitted).

Here, the ALJ properly weighed Dr. Sabahi's medical opinion regarding Plaintiff's anxiety and depression. In his decision, the ALJ gave significant weight to the opinion of psychiatrist Sharon Steingard, D.O., who concluded that Plaintiff's anxiety and depression were only mild and did not result in any functional limitations. (AR 21, 541-46.) Plaintiff also reported that her medication helped with her anxiety and depression. (AR 861.) Dr. Sabahi specializes in rheumatology and fibromyalgia, and thus his medical opinion in those areas is entitled to weight. But even if anxiety and depression are symptoms of fibromyalgia, as Plaintiff argues, the ALJ did not error by placing greater weight on the opinion of Dr. Steingard, a psychiatrist, as to the impact of those neurological conditions. Accordingly, the Court finds that the ALJ provided specific and legitimate reasons for discounting Dr. Sahabi's February 3, 2015 opinion detailing that Plaintiff's symptoms were exacerbated by Plaintiff's mental conditions.

### e. Summary.

The Court finds that the ALJ engaged in harmful error by failing to provide specific and legitimate reasons for discounting Dr. Sahabi's medical opinions as to Plaintiff's physical limitations. To the extent the ALJ discounted Dr. Sahabi's medical opinions as to the effect of Plaintiff's mental conditions, the Court finds the ALJ provided specific and legitimate reasons for doing so.

### B. Symptom Testimony.

Plaintiff also challenges the ALJ's determination that Plaintiff's symptom testimony was not credible. (Doc. 17.) In evaluating the claimant's symptom testimony, ALJs must engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). If the claimant presents such evidence, the ALJ proceeds to consider "all of the available evidence, including [the claimant's] history, the signs and laboratory findings, and statements from [the claimant]," her doctors, and other persons to determine the persistence and intensity of these symptoms. § 404.1529(c)(1). If there is no evidence of malingering, the ALJ may reject

the claimant's symptom testimony only by giving specific, clear, and convincing reasons that are supported by substantial evidence. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

The ALJ summarizes Plaintiff's symptom testimony at the hearing as follows:

> The claimant alleged pain throughout her whole body. According to the claimant, she had pain in her knees, hips, and elbows. She stated she had a migraine headache once per week, lasting four to six hours. Medication sometimes helped her headaches, though she had to lie down in a dark room while they occurred. She said it hurt to touch her body anywhere and that she had flare ups that resulted in pain in her ribcage and hips. The claimant stated she had tried multiple treatments for her pain, including medication and physical therapy. She testified she had stabbing pain in her back a couple times each week. The claimant reported headaches when she would fee tension in her head and had auras in her eyes and sensitivity to light and noise. She alleged she had trouble walking long distances and could walk for only about five minutes. The claimant testified she could stand for only ten minutes and could sit for 15 to 20 minutes before she needed to go lie down. She said she could not do a job with a sit-stand option because she would need to lie down at least once per hour.

(AR 24.)

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (AR 24.) In other words, the ALJ found Plaintiff's statements not credible to the extent she claims an inability to work in a competitive environment. The ALJ provided three reasons in support of his conclusion: (1) Plaintiff's symptom testimony is not consistent with her reported daily activities; and (2) Plaintiff's complaints are not supported by objective medical evidence or by laboratory findings. (AR 24-28.) The Court finds that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's symptom testimony.

### 1. Daily Activities.

The ALJ's first reason for discounting Plaintiff's symptom testimony is that it is inconsistent with Plaintiff's reported daily activities. (AR 24.) An ALJ may reject a claimant's symptom testimony if it is inconsistent with the claimant's daily activities. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). But "ALJs must be especially

cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Thus, an ALJ may use a claimant's daily activities to discredit symptom testimony only if the claimant "spend[s] a *substantial part* of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (emphasis added); *Reddick*, 157 F.3d at 722 ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").

The ALJ found that Plaintiff engages in a "somewhat normal level of daily activity and interaction" inconsistent with Plaintiff's pain symptoms. (AR 24.) Specifically, the ALJ relied upon reports that Plaintiff cared for her four "young" children alone, drove, cooked, and did household chores, as well as shopped with her mother. (AR 24.) But the ALJ did not find that Plaintiff spent a substantial part of her day engaged in these activities. Moreover, the ALJ did not explain how these activities are inconsistent with Plaintiff's claimed limitations, but instead simply concluded that "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." (AR 24.) Such a conclusory explanation, without more, falls short of establishing the clear and convincing reason necessary to discount Plaintiff's symptom testimony.

Furthermore, the daily activity reports on which the ALJ relied actually document significant limitations that are consistent with Plaintiff's symptom testimony. (*See* AR 543 (stating Plaintiff would need to go to bed after dropping kids off to school on bad days); AR 77 (Plaintiff only drives 30 minutes round trip); AR 79 (Plaintiff typically prepares low-effort crockpot meals); AR 83 (Plaintiff shops for groceries with the assistance of her mother).) The ALJ also fails to explain what the "claimant's ability to care for four young children" involves.[2] (*See* AR 27.) At bottom, the ALJ fails to show how Plaintiff's daily

---

[2] The Court notes that the Plaintiff has four children, aged 17, 13, 12, and 7 at the time of her ALJ hearing. (AR 72.) The record indicates that Plaintiff receives help caring

activities are inconsistent with her symptom testimony. *See Burch*, 400 F.3d at 681. Accordingly, the Court finds that the ALJ erred in discounting Plaintiff's symptom testimony based on her daily activities.

### 2. Objective Medical Results and Subjective Pain.

The ALJ's second reason for discounting Plaintiff's symptom testimony is that it is contradicted by the objective medical results in the record. (AR 24.) But the ALJ fails to provide a specific explanation of what objective medical results conflict with Plaintiff's symptom testimony. (*See* AR 24-28.) An ALJ's decision fails when, as in this instance, the ALJ fails to make specific comparisons between a claimant's testimony and the medical evidence the decision summarized demonstrating how the two are insufficient. "This failure alone" is sufficient to show the ALJ erred in evaluating Plaintiff's symptom credibility. *See Vasquez*, 572 F.3d at 591 (finding the ALJ erred where they provided "no level of comparable analysis from which we could evaluate the sufficiency of the credibility determination."); *See also Pulliam v. Berryhill*, 728 Fed. App'x 694, 697 (9th Cir. 2018) (finding an ALJ erred in discounting a claimant's testimony because the ALJ failed to "point to specific facts in the record that support [the ALJ's] findings that "[claimant] did not receive the type of treatment 'one would expect for a totally disabled individual,' [claimant's] descriptions of symptoms were inconsistent, unpersuasive, vague, and general, [claimaint's] work history indicates that she can work despite her impairments, and [claimant] is able to engage in daily activities and go on occasional trips[.]"); *Bergin v. Berryhill*, No. CV-16-2762-PHX-DGC, 2017 WL 3215555, at *5 (D. Ariz. July 28, 2017) (finding that an "ALJ's conclusion that Plaintiff's testimony is not consistent with the medical evidence of record is erroneous" when "the ALJ's decision failed to make a comparison between Plaintiff's testimony and the medical evidence the decision summarized" and that "[t]his failure alone shows that the ALJ did not satisfy her burden of providing clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.").

---

for her seven-year-old from that child's father (AR 72-73), and that Plaintiff's other children are old enough to assist with other household chores (AR 79).

To be sure, the ALJ provides a thorough detailing of Plaintiff's medical history. (*See* AR 21-28.) But nowhere in his decision does the ALJ state which of those medical findings conflicts with Plaintiff's pain related symptom testimony. (*See id.*) The ALJ's failure to discuss which medical evidence is inconsistent with Plaintiff's symptom testimony is error.

## C.  Severity of Fibromyalgia Impairment.

Lastly, Plaintiff argues that the ALJ improperly determined that she did not suffer from the severe impairment of fibromyalgia. (AR 20.) Specifically, Plaintiff believes she has met every threshold for the finding of severely impairing fibromyalgia, including 12 points of tenderness, having six or more fibromyalgia symptoms, and the exclusion of other disorders. (Doc. 17 at 2.) Plaintiff's argument is superfluous.

Assuming, *arguendo*, Plaintiff is correct and the ALJ did improperly determine that Plaintiff's fibromyalgia was not a severe impairment under step two, the error is harmless. At step two of the evaluation process, the ALJ asks whether the claimant has a severe impairment that significantly limits the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). "Step two is merely a threshold determination meant to screen out weak claims. . . . It is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (holding that a step-two determination in a claimant's favor where one impairment was not found to be severe did not impact the claimant's RFC analysis). Because the ALJ found Plaintiff did suffer severe impairments at step two, the ALJ was required to account for all of Plaintiff's impairments in any RFC determination in steps three and four. *See id.* Thus any error by the ALJ in step two with regard to the classification of Plaintiff's fibromyalgia resulted in harmless error.

Furthermore, the Court has already found that the ALJ erred in the evaluation of Dr. Sahabi's medical opinions and in discrediting Plaintiff's symptom testimony and will remand this matter for award of benefits.

## V.  Remedy.

Where an ALJ fails to provide adequate reasons for rejecting the opinion of a

physician, the Court must credit that opinion as true. *Lester*, 81 F.3d at 834. An action should be remanded for an immediate award of benefits when the following three factors are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1202 (9th Cir. 2008), *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007), *Orn*, 495 F.3d at 640, *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004), and *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). There is "flexibility" which allows "courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1020.

The Court finds that all three factors are clearly met. As discussed above, the ALJ fails to provide a legally sufficient reason for rejecting Dr. Sabahi's medical opinions as to Plaintiff's physical limitations and Plaintiff's own symptom testimony. Further, that evidence, if credited as true, would require a finding that claimant is, in fact, disabled.[3]

The Court declines to remand for further proceedings because there is not serious doubt that Plaintiff is, in fact, disabled. The ALJ weighed the evidence of all the medical opinions regarding Plaintiff's impairments. Dr. Sabahi's medical findings satisfy the finding of a disability if credited as true. Accordingly, the Court will remand for the calculation of benefits.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is

---

[3] A vocational expert testified at the ALJ hearing. The ALJ presented to the vocational expert the hypothetical of an individual "sitting for five hours, standing and walking for two hours total in an eight-hour day. She would be required to get up every 30 minutes and take it for 15 minutes and then she could sit back down again. . . . She would require unscheduled breaks once an hour that would last up to 30 minutes. And she would be absent three times or more per month." (AR 99.) The vocational expert testified that such a person would not be able to perform Plaintiff's past work or the jobs to which Plaintiff's skills would transfer. (AR 99.)

- 15 -

**vacated** and this case is **remanded** for an award of benefits based on Plaintiff's August 21, 2014 hearing, with a finding of disability beginning July 1, 2012. The Clerk is directed to terminate this action.

Dated this 17th day of September, 2019.

Honorable John Z. Boyle
United States Magistrate Judge